UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| BRADLEY SCOTT LONIELLO, ) | |
| ) | |
| Plaintiff ) | |
| ) | CAUSE NO. 3:05-CV-363 RM |
| vs. ) | |
| ) | |
| SHERIFF FRANK CANARECCI, *et al.* ) | |
| ) | |
| Defendants ) | |

OPINION AND ORDER

Bradley Scott Loniello, a *pro se* prisoner, filed a complaint pursuant to 42 U.S.C. § 1983. Under 28 U.S.C. § 1915A, the court must review the merits of a prisoner complaint and dismiss it if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. FED. R. CIV. PRO. 12(b)(6) provides for the dismissal of a complaint, or any portion of a complaint, for failure to state a claim upon which relief can be granted. Courts apply the same standard under § 1915A as when addressing a motion under Rule 12(b)(6). *See* Weiss v. Colley, 230 F.3d 1027 (7th Cir. 2000).

> A claim may be dismissed only if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. Allegations of a pro se complaint are held to less stringent standards than formal pleadings drafted by lawyers. Accordingly, pro se complaints are liberally construed.
> In order to state a cause of action under 42 U.S.C. § 1983, the Supreme Court requires only two elements: First, the plaintiff must allege that some person has deprived him of a federal right. Second, he must allege that the person who has deprived him of the right acted under color of state law. These elements may be put forth in a short and plain statement of the claim showing that the pleader is

> entitled to relief. FED. R. CIV. P. 8(a)(2). In reviewing the complaint on a motion to dismiss, no more is required from plaintiff's allegations of intent than what would satisfy Rule 8's notice pleading minimum and Rule 9(b)'s requirement that motive and intent be pleaded generally.

Alvarado v. Litscher, 267 F.3d 648, 651 (7th Cir. 2001) (citations, quotation marks and ellipsis omitted).

Mr. Loniello alleges that guards at the St. Joseph County Jail used excessive force against him. He states that he didn't physically resist them, but he acknowledges that he refused to cooperate with them, refused to follow their orders and refused to let go of a styrofoam tray. Mr. Loniello was being held on the medical unit for mental health reasons and was on suicide watch.

When asked for the styrofoam tray, Mr. Loniello responded, "come in and get it." Complaint at 3, docket # 2. Mr. Loniello argues that the officer did not open the cuff port door so that he could surrender the tray; but standing against the back wall with the tray in his hand was a physical act of refusal which accompanied his verbal refusal. Mr. Loniello does not allege, and, based on this complaint, it would not be reasonable to infer that he asked the guard to open the cuffport door or otherwise indicate any willingness to cooperate.

The guard called the cell extraction team. When it arrived, a guard again ordered Mr. Loniello to surrender the tray. Again, he responded, "come in and get it." Complaint at 4A, docket # 2. The team entered the cell and restrained him. In the process, the styrofoam tray was torn and Mr. Loniello continued to hold a small piece of it and refused to release it. At this point he was taken to the floor

and his hands were underneath him. A guard repeatedly punched him in the back while another attempted to pull his hands from under him. Mr. Loniello acknowledges that he resisted their efforts to reach his hands. With the aid of other officers, they placed him in a restraint chair.

> Where a prison security measure is undertaken to resolve a disturbance, such as occurred in this case, that indisputably poses significant risks to the safety of inmates and prison staff, we think the question whether the measure taken inflicted unnecessary and wanton pain and suffering ultimately turns on whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm. As the District Judge correctly perceived, such factors as the need for the application of force, the relationship between the need and the amount of force that was used, and the extent of injury inflicted are relevant to that ultimate determination. From such considerations inferences may be drawn as to whether the use of force could plausibly have been thought necessary, or instead evinced such wantonness with respect to the unjustified infliction of harm as is tantamount to a knowing willingness that it occur. But equally relevant are such factors as the extent of the threat to the safety of staff and inmates, as reasonably perceived by the responsible officials on the basis of the facts known to them, and any efforts made to temper the severity of a forceful response.
>
> When the ever-present potential for violent confrontation and conflagration, ripens into actual unrest and conflict, the admonition that a prison's internal security is peculiarly a matter normally left to the discretion of prison administrators carries special weight. Prison administrators should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security. That deference extends to a prison security measure taken in response to an actual confrontation with riotous inmates, just as it does to prophylactic or preventive measures intended to reduce the incidence of these or any other breaches of prison discipline. It does not insulate from review actions taken in bad faith and for no legitimate purpose, but it requires that neither judge nor jury freely substitute their judgment for that of officials who have made a considered choice. Accordingly, in ruling on

> a motion for a directed verdict in a case such as this, courts must determine whether the evidence goes beyond a mere dispute over the reasonableness of a particular use of force or the existence of arguably superior alternatives. Unless it appears that the evidence, viewed in the light most favorable to the plaintiff, will support a reliable inference of wantonness in the infliction of pain under the standard we have described, the case should not go to the jury.

<u>Whitley v. Albers</u>, 475 U.S. 312, 321-322 (1986) (citations, ellipsis, and quotation marks omitted).

Once he was placed in the restraint chair, Mr. Loniello, who was yelling at the officers, was told to shut up. Then when he again attempted to speak, an officer hit him in the face twice and ordered him to "stop trying to spit." Complaint at 4B, docket # 2. In response Mr. Loniello again spoke and the officer again hit him in the face twice more. Courts won't second guess the decision of a guard who faced a noncompliant inmate who recently and repeatedly refused to obey simple commands and who clearly understood that physical force would be used to enforce those commands. Some may think the officer used somewhat more force than was necessary or was less patient than he might have been, but the court won't second guess the officer based on the facts alleged in this pleading. The officer described in the complaint was justified in using force to obtain compliance with his order and this complaint is merely an argument over the reasonableness of the particular force which was used and an argument that superior alternatives existed. This does not state a claim. Based on the facts presented by Mr. Loniello, the force applied was used for a legitimate purpose and doing so did not violate his constitutional rights.

For the foregoing reasons, this complaint is **DISMISSED** pursuant to 28 U.S.C. § 1915A.

SO ORDERED.

ENTERED: June 20 , 2005

                                          /s/ Robert L. Miller, Jr.
                                          Chief Judge
                                          United States District Court